UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| ALFRED CLAGGETT, JR., | : | |
|---|---|---|
| Plaintiff | : | NO.: 1:10-CV-00413 |
| | : | |
| v. | : | (JUDGE CONNER) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| BENJAMIN A. FRANTZ, | : | |
| Defendant | : | |
| | : | |
| | : | |

## REPORT AND RECOMMENDATION

Pursuant to an Order entered on January 5, 2011 (Doc. 22), Honorable Christopher C. Conner referred defendant's pending motion for summary judgment (Doc. 11) to the undersigned Magistrate Judge for the purpose of preparing a Report and Recommendation.

**I. Background**

This case involves a complaint that originally alleged both state-law tort claims and federal constitutional claims brought by plaintiff Alfred Claggett, Jr., a resident of McConnellsburg, Pennsylvania, against defendant Benjamin A. Frantz, a Pennsylvania State Trooper, arising from the manner in which Frantz effected an arrest of Claggett following a traffic stop.

*(A) Facts of the case*

On February 17, 2008, around 3:30 AM, Claggett was driving eastbound on Route 30 between Fort Loudon and the Fulton County line. (Doc. 13, ¶ 3; Doc. 14, ¶ 3.) His sixteen-year-old brother, Dwayne McNear, was a passenger in the car. (*Id.*) Claggett did not have a valid driver's license. (Doc. 13, ¶ 4; Doc. 14, ¶ 4.)

Claggett and McNear had been drinking brandy at Claggett's girlfriend's house since 8 or 9 PM the previous evening. (Doc. 13, ¶ 5; Doc. 14, ¶ 5.) They left her house at 2 or 3 AM. (*Id.*) Claggett knew he was drunk, but thought he could handle the drive. (Doc. 13, ¶ 6; Doc. 14, ¶ 6.)

Trooper Frantz and Corporal John Mowery were patrolling westbound in a marked cruiser when they saw plaintiff cross into the troopers' lane of traffic and come down the middle of the road. (Doc. 13, ¶ 7; Doc. 14, ¶ 7.) Frantz had to swerve to avoid an impact. (Doc. 13, ¶ 8; Doc. 14, ¶ 8.) He turned his vehicle around, activated his lights and siren, and initiated a traffic stop of Claggett's vehicle. (Doc. 13, ¶ 9; Doc. 14, ¶ 9.)

As Trooper Frantz exited his vehicle and approached Claggett's car, Claggett drove away. (Doc. 13, ¶ 10; Doc. 14, ¶ 10.) Claggett admits that he fled the scene, but contends that he rethought his decision to flee and tried to stop a moment later, but was unable to, since his brakes were no longer working. (Doc. 14, ¶ 10; Claggett Dep. 11:7–23, July 7, 2010, Doc. 11-4, at 18, 27.) Frantz and Mowery reentered their cruiser and began pursuit of Claggett and McNear. (Doc. 13, ¶ 11; Doc. 14, ¶ 11.)

The pursuit ended three or four miles later in the Fort Loudon area. (Doc. 13, ¶ 12; Doc. 14, ¶ 12.) During the pursuit, Claggett called 911 to inform the operator that his brakes were not working and he couldn't stop; Frantz testified that dispatch had told him of this call. (Doc. 14, ¶ 12; Frantz Dep. 16:20–25, July 7, 2010, Doc. 11-4, at 45, 59.) When Claggett stopped his vehicle, McNear exited from the passenger side and Corporal Mowery placed him in custody. (Doc. 13, ¶ 13; Doc. 14, ¶ 13.)

According to Frantz, Claggett did not exit the vehicle, but began to reach for something inside his car. (Doc. 13, ¶ 14.) Frantz referred in testimony to a video, saying, "[y]ou can see his hands go back in." (Frantz Dep. 8:13–18, Doc. 11-4, at 8.) Plaintiff contends that his hands were in the air and outside the vehicle when Frantz approached his vehicle. (*Id.* at 8:7–10.) He testified that he did not reach for anything inside the car.

2

(Doc. 14, ¶ 14; Claggett Dep. 15:4–11, Doc. 11-4, at 31.)

Trooper Frantz pulled Claggett from the car, believing him to be a potential threat. (Doc. 13, ¶ 15; Doc. 14, ¶ 15.) Claggett adds that Frantz used force to pull him out of the car. (Mowery Dep. 6:7–13, July 7, 2010, Doc. 11-4, at 62, 66; *see also* Claggett Dep. 16:12–15, Doc. 11-4, at 32.) When Claggett was outside the car, Frantz took him to the ground. (Doc. 13, ¶ 16; Doc. 14, ¶ 16.)

Both parties cite the following passage from Claggett's testimony in their statements of facts: "Yeah, I think I remember trying to get up because I wouldn't sit there and just let them keep punching me. I was trying to get away." (Claggett Dep. 20:22–24, Doc. 11-4, at 36.) Frantz reads this as an admission that Claggett refused to stay on the ground and kept trying to get up. (Doc. 13, ¶ 17.) Claggett states that he "only attempted to shield himself from getting punched in the face" by Frantz. (Doc. 14, ¶ 17.)

Corporal Mowery directed Frantz to use his Electronic Immobilization Device (EID), commonly known as a taser, which he did. (Doc. 13, ¶ 18; Doc. 14, ¶ 18.) Frantz shot Claggett with the taser at least four times. (Frantz Dep. 12:1–3, Doc. 11-4, at 55.) Once Claggett was subdued, he was handcuffed and placed into the troopers' cruiser. (Doc. 13, ¶ 19; Doc. 14, ¶ 19.) He later pleaded guilty to fleeing and eluding and driving under the influence, and was sentenced to a term of imprisonment of six to twenty-tree months. (Doc. 13, ¶ 20; Doc. 14, ¶ 20.) Claggett has testified that his injuries from the confrontation with Frantz included being hit on the side of the face, a bruise from his seat belt, a scraped knee, and being repeatedly shot with the taser, but he did not receive any medical attention for any of the claimed injuries. (Doc. 13, ¶ 21; Doc. 14, ¶ 21.) Claggett testified that Frantz never asked him if he needed or wanted to go to the hospital. (Doc. 14, ¶ 21; Claggett Dep. 22:9–12, Doc. 11-4, at 38.)

*(B) Procedural history*

This case originated with the filing of plaintiff's complaint in the Court of Common Pleas of the 39th Judicial District of Pennsylvania on February 11, 2010. (Doc. 1, ¶ 1.) Defendants removed the case to federal court on February 24, 2010. Doc. 1, at 2.) Once the case was in the Middle District of Pennsylvania, defendant filed an answer to the complaint on March 4, 2010. (Doc. 4.)

Shortly thereafter, defendant filed a motion for partial judgment on the pleadings (Doc. 5) on March 9. Plaintiff did not oppose the motion, and the Court granted it in an order (Doc. 10) on April 5, dismissing the state-law claims in Count I of the complaint.

Following discovery, defendant filed a motion for summary judgment (Doc. 11) on September 14, 2010, along with a brief in support (Doc. 12) and a statement of facts (Doc. 13). Plaintiff responded with an answer to the statement of facts (Doc. 14) and brief in opposition (Doc. 17) on October 4. Defendant filed a reply brief (Doc. 18) on October 19. The pending motion is now ripe for adjudication.

**II. Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material

4

fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

**III. Discussion**

Defendant seeks dismissal of the sole remaining count in the complaint, Count II, which is the Fourth Amendment claim based on allegedly excessive force used to effect

5

the arrest. Defendant offers two arguments supporting dismissal: he maintains that his use of force was justified under the circumstances, and alternatively, he should be afforded qualified immunity.

Plaintiff makes his Fourth Amendment claim under 42 U.S.C. § 1983, which itself creates no substantive rights, but rather provides a remedy for infringement of rights established by other federal laws. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere . . . ."). The statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983 (West 2010). Recovery under § 1983 requires proving that "a person acting under color of state law" deprived the plaintiff of a "right secured by the Constitution and the laws of the United States." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). Because a § 1983 claim is predicated on the violation of a constitutional or statutory right, the first step in a § 1983 analysis is to "identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)) (internal quotation marks omitted).

*(A) Fourth Amendment*

A claim of excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable. *Abraham v. Raso*, 183 F.3d

279, 288 (3d Cir. 1999). Since there is no dispute that a seizure occurred—that is, defendant arrested plaintiff—the only question is whether the force used was excessive.

A court must evaluate an excessive-force claim under a standard of objective reasonableness. Fourth Amendment jurisprudence has long sanctioned some use of force in effecting arrests, but whether the use of force in a particular case was within permissible bounds is a fact-intensive question dependent on the details of the matter at hand. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968); *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* (internal citations omitted) (citing *Terry*, 392 U.S. at 20–22; *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *overruled on other grounds by Graham*, 490 U.S. at 386). Several factors bear on this reasonableness determination, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Third Circuit has expanded the list of factors to consider:

> Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Clem*, 499 F.3d 199, 209–211 (3d Cir. 2007).

At the time of the incidents giving rise to plaintiff's excessive-force claim, defendant had witnessed plaintiff attempting to evade the police by fleeing in his car, and also suspected plaintiff of driving while intoxicated. It is not uncommon for a suspect attempting flight to be restrained by force. Also, the use of force occurred during defendant's (ultimately successful) attempt to effectuate an arrest of plaintiff. If the Court were to accept defendant's version of the facts—not only was plaintiff attempting flight, but he was also physically resisting arrest and had shown signs that he might become violent—there is little doubt that defendant's use of force would be found justified.

But the standard of review on a motion for summary judgment constrains a district court to accept plaintiff's contentions on disputed matters of fact, and on crucial points, plaintiff tells a very different story, properly supported with citations to the record. Whereas defendant says that he pulled plaintiff out of the car because plaintiff had reached back into the vehicle and might have posed a danger to defendant and his fellow officer, plaintiff insists that he kept his hands outside the vehicle at all times and complied with all instructions. Defendant says that, even after the three-to-four mile pursuit had ended and plaintiff was out of the car, plaintiff was attempting to flee; plaintiff maintains that he was trying to evade punches from the arresting officers and shots from their taser. And there is no dispute that defendant shot plaintiff with a taser at least four times. Further, defendant made reference in his deposition testimony to a video of the arrest, which may constitute invaluable evidence of what actually happened early on the morning of February 17, 2008, but this video is not available to the Court at this time. Finally, the "reasonableness of the use of force is normally an issue for the jury." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (citing *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)).

Because there are disputed material facts, and because determining whether force was reasonably used is usually for the jury to decide, it is recommended that the Court

8

find that defendant's argument that his use of force was reasonable to be insufficient to grant summary judgment in his favor.

### (B) Qualified immunity

Defendant has asserted the affirmative defense of qualified immunity, which is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The risk of losing this entitlement indicates the importance of resolving questions of qualified immunity as early as possible in the litigation.

There are two inquiries that a court must make in determining whether a defendant is entitled to qualified immunity. One is whether the facts as alleged in the complaint make out a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second question is whether "the right was clearly established . . . in light of the specific context of the case." *Id.* Although the Supreme Court had until recently required that these two questions be addressed strictly in the order presented, this requirement has been relaxed, and lower courts may now "exercise their sound discretion in deciding which of the two prongs of the qualified-immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 815–17. Given that discovery has been completed in this case, the qualified-immunity analysis will examine not the complaint but the record, interpreting the evidence in a light most favorable to the plaintiff. *Saucier*, 533 U.S. at 201.

Qualified immunity serves as a shield from suit if a defendant official could have reasonably believed that the actions in question were lawful in light of clearly established law and the information the defendant possessed at the time. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson*, 483 U.S. at 641). Officials who "reasonably but mistakenly" conclude that their actions were lawful are still entitled to immunity. *Id*.

9

This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 229 (citing *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

For reasons similar to those given above in Part III.A, it would be inappropriate to allow defendant to enjoy qualified immunity. Arrestees have a clearly established right to be free from the use of excessive force in effecting their arrest. And, taking plaintiff's version of the facts as true, defendant could not have reasonably believed that his actions were lawful. According to plaintiff, he complied with all instructions that defendant gave him, yet he was forcibly pulled out of his vehicle and was shot with a taser at least four times. Once on the ground, the only reason he tried to move was so that the officers would stop punching him. Since, by plaintiff's account, he was compliant, there would have been no grounds for defendant to use such brute force on plaintiff. Although proof at trial may vindicate defendant's version of the story, the facts that are currently before the Court do not permit the extension of qualified immunity to defendant.

## IV. Conclusion

Based on the foregoing discussion, it is recommended that defendant's motion for summary judgment be DENIED.

s/ William T. Prince<br>
William T. Prince<br>
United States Magistrate Judge

February 1, 2011